Arguments not to exceed 15 minutes per side, Mr. Helfand for appellate. May it please the Court, William Helfand for GC Services, LP. I have asked the clerk to reserve five minutes for rebuttal if the court will permit. This case presents a clear example of a statutory violation without actual injury. In fact, the record is undisputed that neither plaintiff suffered any actual harm from the letter, the terms of which they, about which they complain. In fact, as of the time they filed suit, the 30-day window, about which they complain, had long closed. And so by the time they filed suit, they had not suffered any harm whatsoever. Indeed, neither even alleged a desire to avail themselves of the procedural protections of the Act, which they claim were not properly communicated to them. But under Spokio, can't standing be conferred when it's connected to the very underlying interest that the statute intends to protect? No, I think to the very contrary, Your Honor, under Spokio. And Spokio is a reasonable analog to the Fair Debt Collection Practice Act issue before the Fair Credit Reporting Act, like the Fair Debt Collection Practice Act, was enacted for the very purpose of protecting individuals, and that is particularly consumers. And as the Supreme Court explained in Spokio, while Congress has the authority to legislate those protections, the failure of those protections, merely by virtue of non-compliance with the statute, are not sufficient to confer constitutional standing. And in fact, if there were anything but the case, then the Supreme Court would not have had to reverse the Ninth Circuit, because in fact that's exactly what the majority found, was that the Ninth Circuit had conflated the question of a statutory violation with the question of injury in fact. And that's exactly... I thought Spokio envisioned the possibility of a procedural violation related to the concrete interest of the statutory provision as providing standing, and isn't that confirmed by the fact that the Ninth Circuit has reissued the opinion, or has issued an opinion, which is laish from our circuit quotes, struble, which makes it very clear that where you have that Venn diagram in which there is a convergence of the interest of the statute and what occurred in this case, that that provides standing, and didn't the Supreme Court yesterday refuse to accept cert on that very standard? I'm not aware of the Supreme Court's ruling on the question of certiorari on that issue. I don't think that the Ninth Circuit's opinion rewrites the Supreme Court's guidance on this issue, and I would respectfully submit that I don't think that the decision of the Ninth Circuit in Spokio should supplant this Court's reasoning and logic in laish, which is that I understand the Court's Venn diagram example, but the Supreme Court made very clear in Spokio and the Second Circuit in Struble and this Court in laish, for that matter, as well as the Eighth Circuit in Breitberg, all of which are cited in the briefing, that it is more than, let me say it this way, it is, to use your analogy, Your Honor, a Venn diagram. That is, there must be an agreement in different spheres. What is presented here, what the District Court accepted here, was the plaintiffs have alleged a violation of the statute, therefore they have alleged concrete injury giving rise to standing. The Court, at least the District Court, didn't stop there. The Ninth Circuit in Spokio did stop there, and the Court found fault for it doing so, and expressly said, look, we're not saying whether there's the concrete, requisite concrete injury here, we're just saying you can't equate it with particularity, and so this District Court went further than saying there is a procedural violation or a statutory violation. It went on to look at that, to the nature of the violation, analyze whether that violation carried a risk of concrete injury, and whether it, whether that injury was to an interest that Congress specifically meant to protect and give a right to vindicate that interest. So it didn't just say, you violated the statute, that's enough. I don't disagree, Your Honor, and I certainly don't mean to suggest that. In fact, the operative language from the District Court was that as a result of the omission, that is, the violation of the plaintiff's claim, the least sophisticated debtor might, and the operative word I would respectfully submit there, both in response to Your Honor's point, as well as Judge Strand's question, is might make an oral request instead, thereby waiving the protections of the sentence. So are you saying that in order to have standing, a from the violation, in the sense that he or she was induced to forego a right? Yes, of course, absolutely. That is the injury in fact. The hypothetical has to be complete for there to be an injury in fact. There is, to Judge Strand's point, a violation, but the other side of that Venn diagram is, did it cause an actual harm? If the Fair Debt Collection Practices Act was created for the purpose of assuring that people from whom debts are sought to be collected receive complete and accurate information regarding their rights in the collection of that debt, upon their receipt of a letter that in fact does not do that, then they are within the purview of the statute and have standing to make a claim, which is what occurred here. The letter did not include the information that the statute itself says must be provided to the debtor. And I certainly can't quarrel with the last point. In fact, I'll wholeheartedly agree that the statute mandated wording of the letter, which is not there, in violation of the statute. But I would respectfully disagree that the purpose, the Congress's purpose was, and it's never stated to be, Congress did not say its accurate information to debtors about the collection of debts. Rather, Congress's stated purpose for the Fair Debt Collection Practices Act was to curb and eliminate abusive debt collection practices. Which, as I understand from reading the statutory provisions and the history, was that it was because debtors were receiving dones without understanding what their own rights were. So the statute said, that is the problem that we're addressing and we are going to require that you provide that information. Yes, I wholeheartedly agree, Your Honor. But the injury arises, back to Judge White's question, the injury arises not simply by failing to provide the information, but the failure of the information resulting in the very abusive debt collection practices Congress intended to curb. That is, if my client had, as the District Court hypothesized, because the appellee suggested it, if my client had failed to allow a dispute or a request for the statutorily required information, because a consumer was induced to make an oral versus a written request, then that would have been both a violation of the statute and an injury because the person would have foregone their rights. Can I ask a question before your time runs out? Yes. And I hope I didn't interrupt your answer to, I think, Judge Strach's question. Does this get any easier when you look at it, not just in terms, or and the redressability factors? And might those be implicated by the fact that the plaintiffs who seek to be class representatives didn't try to contact GC and never actually sought to give notice of a dispute? Yes, Your Honor, and I don't mind the interruption because actually it leads me to the point that I was about to make, so let me finish with that before I sit down with my opening argument. The Second Circuit found that the bank had violated the TILA. To Judge Strach's point, had failed to provide accurate information regarding the consumer's rights under the credit agreement. In finding no standing as to the notification regarding what would happen in the case of a dispute, the Second Circuit pointed out that the injury could always be avoided by compliance with the requirements of notice, with notification regarding a dispute, even though the consumer had never been given the actual information that they were entitled to, that was dictated under the statute just like this. And in that regard, the Second Circuit said, and I'm going to quote now, Comedy could still comply with its obligation to give notice of correction within 30 days of receiving a report of a billing error. Thus, if Struble had reported a billing error, Comedy might have corrected and advised her of that fact within 30 days of receiving her claim. Continuing the quote, it would be more than curious to conclude that a consumer sustains real injury to concrete TILA interests simply from a creditor's failure to advise a reporting obligation that in the end the creditor honors. I hope I've answered your question. And what about the other two violations in Struble? Do you agree with that analysis? I agree with that analysis, but it is the same distinction here as drawn in Struble. In Struble, those other violations were violations of the obligations of the creditor at the outset of the credit relationship so that the credit user, the consumer, understood their obligations under the credit agreement. But not their rights. The two that were dismissed were rights that the consumer has. Right, but this is an obligation, an obligation to put it in writing. It's not an obligation to put it in writing if, just as the Struble court explained, my client would, as the undisputed evidence shows, provided the same treatment to an oral request. Did the plaintiffs in Struble show that they were actually injured by the failure to give that notice? No, no more than... The two that the court found standing in? I'll go back and look at the opinion while I have a moment. I think that they did explain the basis of a claim of a concrete injury, but that distinction, I would respectfully submit, is the answer to Judge Gibbons' question and Judge Strachan's, which is that it's not so much two and two, but it's the nature of those two different types of obligations. I'll reserve the rest of my time for rebuttal. Thank you very much. Good afternoon. May it please the court, James Davidson for Mr. Macy and Ms. Stowe. I think the main issue that the court was just discussing with Mr. Holfand was this material risk of harm and whether that is enough, sufficient for an injury in fact. I believe that the Spokio court made clear that that is. Had they not, they would not have remanded for the Ninth Circuit to determine whether the injury in that case... But in Spokio, you had somebody who actually was alleging that there was false information out there about him. I mean, you've got absolutely no harm or risk of harm to these named plaintiffs. I respectfully disagree with that, Your Honor. The statute requires certain actions by the debt collector, one of which is to provide this validation notice. It requires the debt collector to tell the consumer that certain disputes must be in writing. Requests for credit information in writing triggers additional protections under the statute. So by not providing that information, not providing the obligations and rights of the consumer to the consumer, that in and of itself creates the material risk of harm, that the consumer won't comply with its obligations. I think you were discussing the Struble opinion. I think that's, even though it's a Truth in Lending Act opinion, I think it's pretty close to being on point for these facts and a good analog. In Struble, the bank obviously had to provide certain disclosures. I won't go through everything, but the Second Circuit said in finding that certain of the disclosures were sufficient to constitute an injury in fact, a consumer who has not given notice of his obligations is likely not to satisfy them and thereby unwittingly to lose the very creditor rights that the law affords him. For that reason, a creditor's alleged violation of each notice requirement by itself gives rise to a risk of real harm to the consumer's concrete interest. In the same way that the bank's failure to give the proper disclosures in Struble gave rise to a concrete interest, so did GC's failure to give the disclosures here. I think you can't look at this retrospectively. The risk accrues at the time of the violation. Trying to come up with a good analogy, and I'm not sure this is a good analogy, but if a construction company creates a hole in a sidewalk and is required to put a sign by the sidewalk, pay attention. Instead, they insert in the sidewalk a sign that says, hey, there's actually bricks falling, look up. As people walk by, instead of looking for the hole, they're looking up in the sky. The risk that accrues at the time the sign is placed there and the time someone walks up to the sign, it doesn't change if someone doesn't fall in the hole. It's the same risk. But that's the whole point. If you try to bring an action, a tort action, saying that this was negligent, this is a negligent sign, the law would say, well, you didn't fall in, you don't have any damages. Again, I apologize, as I said at the outset, I'm not sure this is the greatest analogy, but this relates to a statutory violation. And the law would say you're a stranger to this violation because you weren't any different from any member of the public. The law wouldn't say, well, that guy, member of the public, didn't walk down that street, and you did. It would say, no, you're just like anybody else. You don't have standing to enforce this statutory violation. But again, Your Honor, in this case, the letters were directed to my clients. They were addressed to my clients. You're seeking statutory damages, right? That's correct. Are you telling us, I mean, the standing criteria, the elements to establish standing, bear some relationship to the elements ultimately required to establish liability in almost any case, which I think is another way of expressing the concept that Judge White was exploring with you. And so, in your view of the world, any citizen, whether harmed or not, whether, you know, whether that person has sought to pursue any remedy, whatever, or had any interaction with a defendant would be entitled to statutory damages just because he or she files a lawsuit? No, Your Honor. Again, the . . . Then what else is required? I mean, I understand the principle that Judge Stranch was asking you about what is required, but I can't figure out how you get any further than saying, okay, that's definitionally an injury in fact under these cases. How do we get to the other elements of standing, causation and redressability? Sure, Your Honor. So you have a debt collector who's required by statute to send a letter to a consumer to tell the consumer of its obligations. This debt collector sent the letter to my clients, the consumers. That basically triggers the statute. So it's solely the action of the defendant and it does not have anything to do with what the plaintiff does as a result? I believe so, Your Honor, because again, if you go back to Spokio and to the Struble opinion, it's the material risk of harm that arises from the violation is enough to satisfy the concrete injury requirement. Is that . . . I think we've all struggled with how this operates because it is not a huge area of the law where you have statutes that have said, that have looked at a problem and has said, statutorily, Congress is choosing to remedy this problem by mandating that you do something. And if you don't do it, I'm not going to say to you, how many dollars did you lose because that didn't happen? I'm going to say, providing that information to the consumers is the most important thing that the statute requires. Therefore, I will say as a Congress, I choose to say, if you don't do it, it is X dollars for every violation. Is that the distinction that separates these from a tort remedy or some other remedy? This being, I'm looking at the area of, let's take Lujan that says, Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before. Is that the distinction that leads us to this? Because I'm seeing this as a VIN that would say, Congress has made a choice or is this group of plaintiffs within or almost wholly within that circle? And if they are, then this is what Congress wanted to do and Congress has the power to do it. I think that's most of the way there, Your Honor. I think the one additional step is, does the bad action create a risk to the actual concrete harm that Congress is trying to protect by the statute? Spokio makes clear that in some circumstances, a statutory violation is in and of itself enough and in other circumstances, it's not, such as the incorrect zip code they used as an example. I think the next step is, does the statutory violation at issue pose a material risk to the underlying concrete interest that Congress was trying to protect in enacting the statute? And so here you have the FDCPA obviously generally is trying to combat debt collector abuse. One of the ways it does that is through this validation provision and Congress called it a significant feature of the statute because it provides consumers with certain rights. It provides consumers with information about their debt and it allows consumers to basically take actions to protect those rights. Do you look at the risk of harm to this particular group of plaintiffs or do you look at the risk of harm in abstract to the statutory interest without regard to the particular plaintiffs? I think you have to look at the risk of harm to the particular plaintiffs. It's a little convoluted because you throw in under the FDCPA, you have a least sophisticated consumer standard and I think where the district court mentions the least sophisticated consumer would potentially be confused and that was because in our briefing, in our complaint, that's how we argued it. I think you have to look to the actual plaintiffs though. So in this case, the risk was to our not understand their obligations, not understand that they would have to send a writing to dispute the debt in order to invoke certain of their rights. I'm hoping that answers your question, Your Honor. In terms of the second violation where Comedy was the, it wasn't Comedy, who was the bank? I think it was Comedy, Your Honor. Where the bank was the original lender, right? I think they were the bank underlying a credit card. I think it was some sort of correct. So there's no danger that it would be, there's no risk with respect to these plaintiffs that they wouldn't know the original lender because it was the same lender, right? I believe there were two issues there. So on the first two disclosures, the court said were sufficient. The third disclosure, I believe it was because it was a disclosure relating to an automatic payment plan and that the consumer in that case wasn't on an automatic payment plan. Okay. I'm talking about this case. Oh, okay. And you said that you look at these particular plaintiffs, right? Right. So in this particular case, as to the second deficiency in the notice, which was, had to do with identifying the original lender. I'm sorry. Yes, Your Honor, the original creditor. The original creditor is the same as the collecting, as the creditor for whom the debt collector is collecting, right? That's correct, Your Honor. So do you say then that there's no standing there because there's no potential harm based on that violation because the creditors are the same? No, because under the FDCPA, the consumer has the ultimate right to pause debt collection activity by sending a writing. One of the purposes of that provision is to allow the consumer to confirm that this is in fact the creditor I borrowed money from, this is in fact the creditor. I actually believe in G.C.'s letter, and I've left it at the table, but I don't think it says the creditor to who the debt is owed is Synchrony Bank, which I think it was the creditor. I think it just says creditor Synchrony Bank. So the consumer has the right to then send a writing saying, I want information about the creditor, I want to confirm this is the correct creditor. The moment the consumer does that, G.C. has to stop collecting the debt, and they can't continue collecting it until they provide that information. Let me just ask you something else. Do you look at these other issues as being separate from the standing issue? In other words, this argument that it doesn't matter because in fact we honor any, we honor oral communications and we follow it, or that these particular plaintiffs never intended to raise this issue, are those defenses on the merits that can still be considered along with damages? I mean, the court could determine the damages are $1 a person, right? Yes. So are they different issues, or are they subsumed in this standing issue? I believe they're separate issues. I believe they're damages issues. The court can say, yes, you sent this letter, yes, it violated the law, yes, there is standing, but you're a policy, and again, G.C. takes the position that it's undisputed that this is their policy. Discovery was still open in the case when this went up on appeal, so I don't want to say it's undisputed, but the court can say this is your policy. It mitigates any risk or mitigates the damage that could have been caused by this letter. So yeah, I think it's more of a damages issue, and also again... Could there be subclasses? Of people... Categories? I'm just trying to understand if it's not an issue of damages, does, once the case is before the court, is that a question of how people are, of subclasses within? I don't think so, Your Honor. The class that was certified was basically people who received these letters where the letters were not returned undeliverable. I guess that the defendant could... I guess if there are particular class members who did challenge the debt and the defendant didn't follow its policy, maybe there could be some arguments there, but from our view, all these class members are uniform. They all received this letter. It violated the law. A defendant can raise, again, at trial that we have this policy and it mitigates against damages, or it should mitigate against a damage award, but I don't particularly see it as a standing issue. I guess one last point on that, and I see my time is up. Your time is up. Okay. Thank you. I'm starting you point. Okay. Thank you. If I may start by answering Judge White's question. I did read over Struble again, and one, no, I did not find an explication of why the Second Circuit thought that those were different types of injury except to say that the Second Circuit distinguished the two that it found standing versus the two in which it did not find standing. The only distinction I can detect is that the two for which the court found standing were important notifications at the outset of the relationship, according to the circuit, so that the consumer would know what their rights would be as they exercised the credit that was being granted to them. But the court did not require any allegation or showing that they suffered actual harm in reliance on not having that notice. I wouldn't say it that way, if you'll allow me, Judge. What the Second Circuit said was that they could find actual harm in the failure to provide that information, that they found more than a hypothetical injury in the failure to provide that information. And that goes back to the point that Mr. Davidson made just a moment ago. He correctly cites or quotes the circuit in Struble, the circuit court, as saying, a consumer not given notice of his rights is not likely to exercise them. But the problem is that he takes that statement out of the context that it has to be applied here. Here, that would be worded that a consumer who is told they have more rights than they actually have is somehow injured, because that's the undisputed evidence before this court. In Struble, it's undisputed that where the court found standing, it was because information that the consumer needed to have was not conveyed to them. Here, my client, undisputedly, conveyed more opportunity to the plaintiffs and the putative class than we all agree they actually were required to give them. Your opposing counsel says that discovery is not closed. Jane, I can't hear you. And that at this point, it may be undisputed because discovery is not closed. Did I miss something? I never found in the record a written policy. I found only affidavits that said, this is what we did. Well, I don't believe the record includes a written policy. It is correct to say that the claims of liability is not closed. But to be sure, Judge Strange, discovery in this issue is foreclosed as to Macy and Stowe, because when Mr. Shordock from GC Services submitted evidence that neither they nor any other member of the putative class ever contacted GC Services, orally or in writing, neither Macy nor Stowe... That's not my question. My question is, is there a written policy in the record that says this is what you do? There is a written policy, to my understanding, but as I said, it is not in the record. You are correct that it is not in the record before the court. But the evidence is undisputed. Neither Macy's nor Stowe contend that they attempted to or even wanted to contact GC Services. I'm just struggling with your argument that there can't possibly be damages because this is what we always do. We allow it. I'm not finding a policy in there that says it. I guess maybe that's part of the problem for me, is that if someone who has a statutory duty to provide notice to consumers doesn't do it, and then all they have to do if a case comes up is put in an affidavit that says, oh, I wouldn't have called them on that, isn't that kind of the question that the statute is getting to? Is it not what you say after the fact or what you agree you would have or not done? It's that you have to tell the consumer the information. Well, okay. So there's a lot there. If you'll let me unpack that a little bit, Judge. I am not arguing that they don't have damages. I am arguing they don't have standing. Because to get to damages, they first have to show the court they have standing. And to get to standing, they have to show the court that they actually suffered an injury, not just a violation. And in that regard, I would cite you back to this court's opinion in Leash. In Leash, this court rejected the church opinion from the 11th Circuit in which this court said the church court thought the FDCPA had created a new right, the right to receive required disclosures in communications governed by the FDCPA, and a new injury, not receiving those disclosures. This court rejected that very holding. I struggle with seeing how Leash fits. I understand that part of it, but isn't what Leash says that no, you don't have a cause of action for what is not the basis of the statute? You can't come into court and say, I wanted discovery this way, and you didn't give it to me, and I wanted it filed that way, and these are state requirements. But does it exclude the possibility that you would have that cause of action if what was missing from the notice was in fact required by the statute and not by a separate sovereign? No, as in Struble, as in Leash, the obligation to provide the information is in violation of the statute. But whether... How is Leash in violation of the statute when the violation that was alleged was that you did not do discovery in accordance with state requirements? Mr. Leash's contention was the same one Your Honor is asking about here. Does the FDCPA require that you not give me any false information about how you collect my debt? That's what he posited. This court rejected that. The answer to Your Honor's question is in Leash, in that this court said it's not enough to show a violation. It was a false statement of the procedure for Mr. Leash to follow. But merely providing him false information about what he was required to do in connection with the collection of his debt was not enough because Mr. Leash, as this court observed, never attempted to comply with any of that false information, which is exactly what you have here. I think on that note, unless there's an additional question, we're done. Thank you for indulging me the additional time. Thank you both for your argument and we will consider the case carefully. Thank you. Thank you. Good day. And you may adjourn court. This honorable court is now adjourned.